## SESLER v. MONTGOMERY.*

### No. 11,359; December 3, 1888.

#### 19 Pac. 686.

**Slander—Communication by Husband to Wife—Publication.—** Communication by a husband to his wife of slanderous words in regard to a woman is a publication.

**Slander—Evidence.—In an Action for Slander, Where It is Shown That Defendant** accused plaintiff of perjury and want of chastity, in a room where his wife was, in a voice loud enough to be heard outside, there is sufficient evidence that she heard and understood the words.

**Slander—Privileged Communication—Husband and Wife.—Under** Civil Code of California, section 47, providing that a privileged communication is one made without malice to a person interested therein, by one who is also interested, or by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, and section 48, providing that malice is not to be inferred from the mere fact of publication, a finding of the jury that a communication from a husband to his wife, with whom he was on bad terms, slanderous of a female acquaintance of hers, who had testified for her in divorce proceedings between her and her husband, was made with malice, and was not privileged, cannot be disturbed.

**Trial—Argument of Counsel—Failure to Introduce Evidence.—** Under Code of Civil Procedure of California, section 2061, subdivision 6, providing that evidence is to be estimated, not only by its

---

*For subsequent opinion in bank, see 78 Cal. 486, 21 Pac. 185.

own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and the other to contradict, comment to the jury upon the failure of defendant to introduce his wife to corroborate his own testimony is proper.[1]

APPEAL from Superior Court, Alameda County.

Action by Mary A. Sesler against A. Montgomery for slander. Judgment for plaintiff, and defendant appeals.

Estee, Wilson & McCutchen, J. C. Martin and W. F. Goad for appellant; W. W. Allen, A. R. Cotton and W. H. H. Hart for respondent.

HAYNE, C.—Action for slander. Verdict and judgment for plaintiff. Defendant appeals. Several points are made.
1. It is said that there was no publication. The facts are that the words were spoken to the defendant's wife, and were overheard by the plaintiff, who was listening in the corridor. The point is that husband and wife are in law one person, and that therefore a communication between them is not "published," within the meaning of the law of slander. It is to be observed that this is a different thing from saying that the communication was privileged. There must be a publication before the question of privilege can arise. We have not been referred by appellant to any decision in support of the precise point, except Trumbull v. Gibbons, 3 City H. Rec. 97, decided by an inferior court. We have not had access to this report, but from the mention of the case in Townshend on Slander we should infer that the decision proceeded on another ground, and that what is said in relation to the question in hand is merely a dictum. Nor have we been able to find any case exactly in point. Upon principle we should say that there was a publication. That husband and wife are one person is a mere fiction, and is not true for all purposes. The tendency of modern law, especially in California, is certainly not to extend the operation of the fiction. Nor do we see any reason why it should be extended, at least in the present direc-

[1] **Cited** and approved in Chicago etc. Ry. Co. v. Krayenbuhl, 70 Neb. 771, 98 N. W. 46, a suit for damages for injuries to a child caused by negligently leaving a turntable unlocked. The plaintiff's counsel commented upon the nonproduction, as a witness, by the defense, of the person whose duty it was to keep the turntable locked.

tion. The reputation of a woman can certainly be injured by slanderous communications to her female friends; and the fact that the communication came through a husband would not ordinarily deprive it of its injurious effect. Furthermore, if husband and wife are one person to the extent that a communication from the husband to the wife concerning a third person is not published, it would seem to follow that a communication from a third person to one of the spouses concerning the other would not be a communication concerning a third person, so as to constitute a slander. But the contrary has been decided. A communication to one of the spouses concerning the other may be slander: Wenman v. Ash, 13 Com. B. 836; Schenck v. Schenck, 20 N. J. L. 208; Odgers, Sland. & Lib. *152, *153. That the result is the same in each case is stated by Townshend, who says: "The husband or wife of the author or publisher, or the husband or wife of him, of whose affairs the slander concerns, is regarded as a third person": Townsh. Sland. & Lib. sec. 95. We think, therefore, that a communication from a husband to his wife may constitute a publication.

2. It is contended that there was no evidence that the wife heard or understood the words uttered. The words imputed to the plaintiff perjury and a want of chastity, and hence were slanderous per se. They were not ambiguous, and were spoken of the plaintiff, and could not have referred to any other person. This being the case, the only possible point that can be made in this regard is that there is no proof that the wife heard or understood the words at all. It is certainly true that the slanderous words must be heard and understood. And it may be conceded that the burden is on the plaintiff to prove the hearing and understanding. But where a man converses with his wife in a room in such a tone of voice that he can be heard and understood by a person outside of the room, it is hardly possible that the wife did not hear and understand him. If the wife was deaf, or did not understand the language, or any other peculiar circumstance existed to prevent what would be the ordinary result, we think the defendant should have proved it. What was proved was sufficient to overcome the burden we have assumed to be on the plaintiff in the first instance.

3. It is urged that the communication was privileged. The code provides that a privileged communication is one made "in a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information": Civ. Code, sec. 47. It is clear from the above that if there be malice the communication cannot be privileged, and the question of the existence of malice is one for the jury. In this case the jury was instructed that if no malice was shown the communication was privileged. It must be assumed from their verdict, therefore, that they believed that there was malice; and, although malice is not to be inferred from the mere fact of the publication (Id., sec. 48), we cannot say from the record that the jury was not justified in finding the existence of malice. The circumstances were such as to negative the theory that the communication was for justifiable purposes. At the time it was made, the defendant was on bad terms with his wife. A suit for the annulment of the marriage was then pending. The plaintiff was an acquaintance of the wife, and had come, at the wife's request, to give the protection of her presence against any outbreak on the part of the husband. She had testified on behalf of the wife in the suit above mentioned. The charge of perjury was probably made by the husband with reference to this testimony, and the inference is strong that it was resentment on his part at her testifying on the part of the wife, and not solicitude for the welfare of his family, that caused him to utter the slander. This inference is not weakened by the circumstance that the interview between the defendant and his wife was a stormy one; that he "became so excited" that he called his wife a liar; that the communication with reference to plaintiff was coarse and brutal in its nature; and that "he spoke in an angry tone." Taking everything together, we think there was evidence from which the jury could infer malice. Hence the communication was not privileged.

4. It is claimed that there was an irregularity of counsel for the plaintiff in the argument to the jury. During the trial the plaintiff called the defendant's wife to the stand, and after

she had been sworn, and testified that she was his wife, the defendant's counsel objected to any further testimony from her, on the ground that the consent of the defendant to her being a witness had not been obtained. There was no ruling upon the point. The plaintiff withdrew the witness, and she was not subsequently recalled by either party. This left a direct conflict between the plaintiff and the defendant as to whether the slanderous words were uttered. The plaintiff affirmed the fact, and the defendant positively denied it. During the argument the plaintiff's counsel began by referring to the objection which had been made to the wife's testifying, and was proceeding to argue from it that an inference against the truth of the testimony of the defendant should be drawn. The counsel for the defendant objected to this line of argument; but the court overruled the objection, and the counsel for the plaintiff proceeded with his argument, dwelling mainly upon the failure of the defendant to call his wife as a witness. We think the action of the court was proper. Where it is in the power of a party to call a witness who can corroborate or disprove his statements, his failure to call such witness is a legitimate subject of comment to the jury. Such a case falls within the scope of subdivision 6 of section 2061 of the Code of Civil Procedure, which provides that "evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and of the other side to contradict": See, also, Gray v. Burk, 19 Tex. 233. The nonproduction of evidence in such case is a circumstance from which the jury may draw an inference of fact. If this is so, it is permissible to counsel to ask them to draw such inference; and it is a matter of every-day occurrence for counsel to make such arguments. The case is not similar to that of a person accused of crime; for the statute expressly provides, with reference to cases where the prisoner does not testify, that "his neglect or refusal to be a witness cannot in any manner prejudice him, nor be used against him on the trial or other proceeding": Pen. Code, sec. 1323. Now, in the present case, the wife was perfectly competent to be a witness if the defendant had consented. The slanderous words having been alleged to have been spoken to her, she could have corroborated or disproved his statements; and the circumstances excluded any idea that the communica-

tion was in fact confidential. He exercised much ingenuity to avoid admitting that she was his wife. His failure to consent was the sole reason she could not testify; and under the circumstances we think that the case falls within the rule above stated, and that the failure to give his consent was a subject of comment to the jury. It is to be observed that there was no ruling of the court upon the admissibility of the testimony, the witness having been withdrawn before a ruling was made; and there was no attempt to argue against the justice of the law, or to induce the jury to disregard the law, and it is therefore unnecessary to express an opinion as to what would have been the result had such circumstance existed. Moreover, we are not to be understood as saying that in every case in which a party fails to produce a witness such failure may be commented on to the jury. The fact sought to be inferred may not be an issue in the case (Fletcher v. State, 49 Ind. 134, 19 Am. Rep. 673), or may not be proper for the consideration of the jury: Rudolph v. Landwerlen, 92 Ind. 34. The whole subject of the latitude to be allowed counsel in argument rests very much in the discretion of the trial court, and an exercise of such discretion should be disturbed except in a clear case. The other points do not require special notice. We do not see any contradiction in the instructions. The charge of the court seems to have correctly presented the case to the jury. We think that the defendant had a fair trial, and we therefore advise that the judgment and order appealed from be affirmed.

We concur: Belcher, C. C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

McFARLAND, J., Concurring.—I concur in the judgment; but I am not prepared to say that there would have been a publication, if, at the time the slanderous words were spoken by defendant to his wife, he had been living with her in the friendly and confidential relation which usually exists between husband and wife.