[No. 11359. In Bank. — March 23, 1889.]

## MARY A. SESLER, RESPONDENT, v. A. MONTGOMERY, APPELLANT.

SLANDER — PUBLICATION — COMMUNICATION FROM HUSBAND TO WIFE. — A communication from a husband to his wife, not made in the presence of a third person, does not constitute a publication within the meaning of the law of slander.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Estee, Wilson & McCutchen, J. C. Martin,* and *W. F. Goad,* for Appellant.

*W. W. Allen, W. H. H. Hart,* and *A. R. Cotton,* for Respondent.

McFARLAND, J. — Action for slander. Verdict and judgment for plaintiff. Defendant appeals from the judgment, and from an order denying a new trial.

The evidence shows that the alleged slanderous words were spoken (if at all) in the house of the defendant, in a conversation addressed exclusively to his wife; and the question to be determined is this: Did the speaking of the words under these circumstances to his wife alone constitute a "publication" within the meaning of that word as used in the definition of slander? (The plaintiff was eavesdropping, and claims to have heard the alleged slanderous words from a point outside of the door of the room in which defendant and his wife were talking.)

The codes of this state provide how marriages may be entered into, and how divorces may be obtained; and they also have certain provisions, different from the rules of the common law, about the property of the spouses, and, to a limited extent, about their power to make con-

tracts, etc. But in the codes there is no attempt made to change the essential nature of marriage, or to state its manifold incidents and consequences, or to establish new rules for the solution of the various questions which arise out of those incidents and consequences. Moreover, although the codes define slander as a "false and unprivileged *publication*" of certain matters, it does not declare what shall constitute "publication." For the determination of these questions, therefore,—as there are no provisions about them in the codes,—we must look to the common law, which is the basis of our jurisprudence. (Pol. Code, sec. 4468; *Van Maren* v. *Johnson*, 15 Cal. 312.)

It is admitted to be the settled rule that there can be no publication within the meaning of the law of slander, unless the words alleged to be slanderous are spoken to and in the presence of a third person; that is, a person other than the one who speaks and the one of whom the words are spoken. A man entirely alone cannot commit slander by talking aloud to himself. And the final question to be solved is, whether a wife, when spoken to by her husband in the privacy of home, and not in the presence of others, is a "third person" within the meaning of the law under review, or whether, under those circumstances, there should be applied the doctrine that the husband and wife are civilly one person.

There is no doubt of the general common-law rule that the civil existence of the wife is merged in that of her husband. Blackstone says that "by marriage the husband and wife are one person in law," and that "the legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband." (Vol. 1, p. 442.) Upon this principle of the legal union of husbands and wives, most of their rights, duties, and disabilities depended. They could not be witnesses for or against each other, because of the maxims, *Nemo in propria causa testis esse debet,*

and *Nemo tenetur seipsum accusare.* And upon this ground, it has been always held that no prosecution for conspiracy can be maintained against a husband and wife only; because the crime of conspiracy cannot be committed by one person alone, and a husband and wife are but one person in law. (Hawk. P. C., p. 448, sec. 8; 2 Russell on Crimes, p. 690; *People* v. *Richards,* 67 Cal. 412; 56 Am. Rep. 716.)

It is said that this rule was a legal fiction, and that in the course of modern legislation and judicial decisions it has been exploded. But it is no more a fiction than any other general principle of law; and we have seen no authentic account of the explosion. There always were some exceptions to the rule from the earliest history of the common law; and modern legislation and decision have merely created additional exceptions. The general rule still obtains, save where an exception has been legally established. And we have been referred to no decision establishing an exception as to the point involved in the case at bar. Indeed, the only case in point cited at all is from an inferior court of New York (*Trumbull* v. *Gibbons,* 3 City Hall Rec. 97), in which it was directly held that the delivery of a defamatory manuscript by a husband to a wife was not a publication. And every sound consideration of public policy, every just regard for the integrity and inviolability of the marriage relation,—the most confidential relation known to the law,—should restrain a court from establishing the exception upon which the judgment in the case at bar rests. When husbands and wives talk to each other alone, the conversation differs but little from the process of talking to one's self, or, as it is sometimes called, "thinking aloud." There is no intention that the conversation shall be repeated to others, and no presumption that it will be. It would be strange, indeed, if a husband or wife could not safely say anything to the other about their neighbors or acquaintances which he

or she would not feel warranted in saying to the world. Such a rule would destroy all opportunity for confidential conference, advice, or suggestion. To a curious person asking what had occurred between a husband and wife in the seclusion of their home, the appropriate answer would be, *Id est nullum tui negotii.*

It has been held in another state that there was a sufficient publication of a libel where a letter was sent to a wife containing defamatory matter about her husband; and it is argued that the court making the decision must have held the wife to be a third person. (*Scheneck* v. *Scheneck*, 20 N. J. L. 208.) Whether or not that decision was a correct exposition of the law, it is clear, at least, that another principle was involved. As the court say in that case: "Such a communication made directly to the wife is an attempt to poison the fountain of domestic peace, conjugal affection, and filial obligation, at their very sources." There the exception which was allowed to the general rule was in support of the confidential relation of marriage; while in the case at bar the exception sought to be established would be destructive of that relation.

Our conclusion is, that a communication from a husband to a wife, not in the presence of any other person, does not constitute a publication within the meaning of the law of slander. It follows from this conclusion that the judgment in the case at bar was erroneous.

Judgment and order appealed from reversed, and cause remanded.

WORKS, J., SHARPSTEIN, J., PATERSON, J., THORNTON, J., and BEATTY, C. J., concurred.