SPRINGER, Appellant, v. SWIFT, Respondent.

(239 N. W. 171.)

(File No. 7125. Opinion filed November 18, 1931.)

*Martin & Martin,* of Hot Springs, for Appellant.
*Lynch, Doyle & Mahoney,* of Sioux Falls, for Respondent.

CAMPBELL, J. Plaintiff instituted her action against the defendant to recover actual and exemplary damages for slander. The complaint undertook to set forth two causes of action. The first cause of action charged that the defendant wrongfully, fraudulenty, and maliciously published to Mrs. Charles L. Swift, his wife, a certain false, untrue, and slanderous statement concerning the plaintiff imputing to the plaintiff thereby the present existence of an infectious, contagious, and loathsome disease. As to the first cause of action, there is no allegation that the statement was made in the presence or hearing of any one other than defendant's wife. The gist of the second cause of action is set out in paragraph four thereof as follows:

"That the defendant, Charles L. Swift, did wrongfully, fraudulently, and maliciously publish and circulate a false, untrue, libelous and slanderous statement concerning the plaintiff in that this statement imputed to her the present existence of.an infectious, contagious and loathsome disease, to-wit:

"That on or about the 1st day of November, 1927, the defendant, Charles L. Swift, made in substance the following slanderous

statement to said Mrs. Charles L. Swift, in the presence and hearing of one Thelma Young in the Swift Hospital at Martin, S. D.,—'You should not have told Alvina Young and Isabel Livermont that Mrs. Springer has the syphilis; it has caused them a lot of trouble to look for another boarding place; they probably could not have carried the germs back here by boarding there anyway.' "

Defendant demurred separately to both causes of action, claiming as to each that it did not state facts sufficient to constitute a cause of action. An order was entered sustaining the demurrer as to the first cause of action and overruling the demurrer as to the second cause of action, and written notice thereof served upon plaintiff's counsel. Plaintiff did not attempt to plead over on the first cause of action. Defendant answered as to the second cause of action by interposing what was, in substance, a general denial, save for certain admissions of fact as to the residence and occupation of plaintiff and the residence and occupation of defendant. Issue being joined and the case coming on for trial, defendant again challenged the sufficiency of the second cause of action by demurrer ore tenus objecting to the introduction of any evidence thereunder, for the reason that the same did not state facts sufficient to constitute a cause of action. The learned trial judge sustained defendant's objection. Thereupon, having previously sustained the formal demurrer to the first cause of action and having now sustained the demurrer ore tenus to the second cause of action, the court entered a general judgment, on defendant's motion, in favor of the defendant and against the plaintiff upon all the issues, dismissing the entire complaint upon its merits, and awarding defendant his costs.

From this judgment, plaintiff has now appealed, and urges the validity and sufficiency of each of the two causes of action attempted to be stated in her complaint.

■ ■ At the outset, we meet two practice points. The order sustaining the formal demurrer to the first cause of action was made and entered November 8, 1928. The final judgment was made and entered August 9, 1929, and the appeal from said judgment was taken August 2, 1930. Respondent urges, inasmuch as appellant might have appealed from the order sustaining the demurrer to the first cause of action (section 3168, Rev. Code 1919) within sixty days after written notice of the filing thereof

(section 3147, Rev. Code 1919), and failed so to do, that the propriety of said order cannot now be challenged on appeal from the final judgment. Section 3169, Rev. Code 1919, provides that upon an appeal from a judgment this court may review any intermediate order or determination of the court below which involves the merits and necessarily affects the judgment appearing upon the record. An order sustaining a demurrer to a complaint is an intermediate order involving the merits, and where plaintiff has not waived his objections to such order by thereafter pleading over, he may review the same either by direct appeal from the order, or by appeal from the final judgment thereon entered upon a proper record. Thomas v. Issenhuth (1904) 18 S. D. 303, 100 N. W. 436.

As to the second practice point, appellant maintains that, when respondent interposed an answer after his demurrer to the second cause of action had been overruled, he thereby waived his objections to the sufficiency of statement of said cause of action for all time. Appellant states her contention in this regard in her brief as follows: "By answering over after the court's decision that the complaint in the second cause stated a good cause of action, the defendant waived the question of the sufficiency of the Complaint for all purposes of the trial of this case. That ruling of the Court became the law of this case to the end."

To this view, likewise, we find ourselves unable to assent. We think that a defendant who demurs to a complaint, and thereafter answers, stands precisely in the same position as though he had answered originally without having demurred at all. Demurrable defects in pleadings are specified in section 2348, Rev. Code 1919. When such matters appear upon the face of the complaint and a demurrer is not interposed, the defendant is deemed to have waived said defects 'excepting only the objection to the jurisdiction of the court, and the objection that the complaint does not state facts sufficient to constitute a cause of action." Section 2352, Rev. Code 1919. Though note that defendant may thereafter obtain leave of court to withdraw his answer and interpose a demurrer. Bebout v. Pense, 31 S. D. 619, 141 N. W. 515. When defendant demurs to a complaint upon a ground other than the jurisdiction of the court or the insufficiency of facts and upon overruling of his demurrer

answers, the entire objection is deemed to have been waived just as though he had answered without demurrer. On the other hand, when defendant demurs to a complaint for lack of jurisdiction of the court or for insufficiency of facts, and his demurrer being overruled, answers, he is still in the same position as though his demurrer had never been interposed; but by the express provisions of section 2352, Rev. Code 1919, his objection to the defect is not waived. He has, of course, lost the benefit of attacking such defect by the particular method of demurrer. By answering over, he has lost the right of direct appeal from the order overruling his demurrer. Pierson v. Minnehaha County, 26 S. D. 462, 128 N. W. 616, Ann. Cas. 1913B, 386. And he has also lost the right, in the event he later appeals from some subsequent order in the cause or from an adverse final judgment therein, to assign as error, and review upon such appeal, the order overruling his demurrer. Schwitz v. Thomas, 38 S. D. 180, 160 N. W. 734; Sogn v. Koetzle, 38 S. D. 99, 160 N. W. 520 (these two cases must be taken as overruling a contrary holding on this particular point in Pierson v. Minnehaha County, 28 S. D. 534, 134 N. W. 212, 38 L. R. A. (N. S.) 261, although by inadvertence or otherwise they fail to make any mention whatever thereof); State ex rel Smith v. Miers, 49 S. D. 96, 206 N. W. 236; Tschetter v. Hofer, 57 S. D. 272, 231 N. W. 937. But although in such case a defendant is precluded from reviewing, either by direct appeal or otherwise, the order overruling his demurrer, nevertheless he has not waived the defect which he first sought to attack by interposing the demurrer, and he is still at liberty to present the same defect to the court either by objection to introduction of evidence or any other apt and proper method, and to review an adverse decision thereon by proper assignment of error either by direct appeal (if the second adverse ruling be one from which a direct appeal will lie) or on appeal from final judgment. Dakota Nat. Bank v. Kleinschmidt, 33 S. D. 132, 144 N. W. 934; Stianson v. Stianson, 40 S. D. 322, 167 N. W. 237, 6 A. L. R. 280. Appellant in this connection cites the case of O'Connor v. Hemeyer, 52 S. D. 159, 216 N. W. 887, 889, wherein this court said: "Appellant was not in a position to raise this question. It was waived by answering after his demurrer to the cross-complaint was overruled." That language must be construed as limited to the situation before the court when it was used. The demurrer in

that case (although such fact is not perhaps entirely manifest from the opinion) was not for lack of jurisdiction or for insufficiency of facts to state a cause of action, but was interposed upon the fourth ground specified in section 2348, Rev. Code 1919; namely, that it appeared upon the face of the cross-complaint that there was a defect of parties defendant. Under the express provisions of section 2532, Rev. Code 1919, this was a defect which, appearing upon the face of the complaint, would be waived entirely by failure to demur. Of course, upon the principles we have above set out, it was equally entirely waived by answering after the overruling of the demurrer; defendant then being in the same position as though he had answered without ever demurring.

We are therefore of the opinion that there are properly before us for review upon the merits both the order of the trial court sustaining respondent's demurrer to the first cause of action, and the ruling of the trial court in sustaining respondent's objection to the introduction of any evidence under the second cause of action, and in connection with the latter, we think, under the circumstances here presented, the language of this court in Archambault v. Zimmerman, 50 S. D. 130, 208 N. W. 717, is applicable. "While the courts do not look with favor on objections to the introduction of evidence, such disfavor is based upon the theory that the fairer and more orderly way to determine the sufficiency of a pleading is upon demurrer, whereby one whose pleading is successfully attacked may have an opportunity to amend without undue delay or expense. But our statute, section 2352, Revised Code of 1919, providing that a failure to demur or plead specially waives certain defects, specifically excepts from such waiver the objection that the complaint does not state * * * a cause of action. So this objection should be entertained by the trial court, and where it appears from the complaint that the substance and not the form is involved, there should be no reluctance to test the sufficiency of the complaint in the same manner as upon demurrer."

We will examine first the sustaining of respondent's demurrer to the first cause of action. The review of this ruling involves but one question, and that question is readily susceptible of precise and definite statement. Admittedly, the complaint in a slander case must sufficiently allege publication of the slanderous statement by the defendant, and the question is: Does an allega-

tion that defendant made the slanderous statement to his own wife (or to her own husband as the case may be) sufficiently allege a publication thereof? The point involved is not any question of privilege, but whether or not the statement to the spouse is in fact any publication at all. Although we do not pretend that our investigation on the point has been exhaustive, nevertheless we have examined into the matter with some care, and it seems somewhat curious that this exact question has been so rarely presented to the courts. The statements of text-writers and encyclopedias generally seem to indicate, more or less definitely, that, under such circumstances, there is in law no publication.

"Husband and wife are generally to be considered one person in actions of tort as well as contract; so that confidential communication of defamatory matter by the author to his wife is not a publication." Newell, Slander and Libel (4th Ed.) p. 230.

"In the converse case of the defendant and his wife a different rule prevails * * * there is in law no publication where the words merely pass between husband and wife." Odgers, Libel and Slander (5th Ed.) p. 159.

"On the principle, that husband and wife are one person in law, the rule has been stated that a communication of defamatory matter by defendant to his wife in confidence is not a publication." 36 C. J. 1226.

"An exception has been recognized to the rule that the utterance of defamatory words to a single person constitutes publication, in the case of a communication from a husband to his wife, when not made in the known presence of a third person. Such communication has been held an insufficient publication, on the ground that the act of talking to one's wife differs but little from talking to one's self, or 'thinking out loud.'" 17 R. C. L. p. 316.

"There is sufficient publication to a third person if there be publication to a stranger or to the wife of the plaintiff * * * or indeed to any person other than the plaintiff or the wife or husband of the defendant." 18 Halsbury, The Laws of England, p. 657. An examination of these authorities shows, however, that in each instance the citations relied upon to support the declaration of the law, as above set forth, are limited to one or more of three cases. Trumbull v. Gibbons, 3 City H. Rec. (N. Y.) 97; Wennhak v.

Morgan, 20 Q. B. Div. 635, 52 J. P. 470, 57 L. J. Q. B. 241, 59 L. T. 28, 36 W. R. 697; and Sesler v. Montgomery, 78 Cal. 486, 21 P. 185, 3 L. R. A. 653, 12 Am. St. Rep. 76.

The earliest of these cases was Trumbull v. Gibbons (for a rather interesting incidental reference thereto see Den d. Trumbull v. Gibbons [1849] 22 N. J. Law [2 Zabriskie] 117 at page 128) decided by an inferior court in New York in 1819. The official report of the case is not available in our library. It is cited in both Wennhak v. Morgan, supra, and Sesler v. Montgomery, supra, and the substance of its holding is set forth in a note in Townshend on Slander and Libel (4th Ed.) p. 84, as follows: "Gibbons wrote defamatory matter of Trumbull, and had fifty copies printed in pamphlet form in Massachusetts. Forty-five copies he retained, and five copies he sent to his wife in New Jersey, indorsing four of them with the names of certain persons, acquaintances of the wife, but without any instructions to the wife as to how she should dispose of the copies so sent her. The wife delivered two of the copies in New Jersey to the persons whose names were indorsed thereon, and the others she delivered in New Jersey to Trumbull, who exhibited them to various persons. On Trumbull suing Gibbons in New York for libel, it was contended for defendant, (1) that there was no publication by defendant; (2) or no publication within the State. The second point was overruled, and as to the first it was held that the delivery of the manuscript to be printed was a publication, although a delivery to a wife in confidence would not be a publication, yet in the case then before the court the wife acted as the agent of her husband, and her delivery of the pamphlets amounted to a publication by the defendant."

The second of these cases in point of time was the English case of Wennbak v. Morgan, decided February 2, 1888. In that case, plaintiff, a domestic servant, had been in the employment of a lady, who, upon his leaving her service, gave him a "good character" in writing. Plaintiff thereafter entered the service of defendant on the faith of such character which he handed to the defendant. Finding that the place did not suit him, plaintiff gave notice to leave, and, after having given such notice, defendant one morning summarily dismissed the plaintiff, charging him with having been absent from the house the previous night without leave. Plaintiff thereupon asked for his "good character" which he had

handed to defendant upon entering his service, and the document was delivered to plaintiff by the wife of the defendant with certain defamatory words which had been written thereon by the defendant. The court held that there was no publication. They cited the case of Trumbull v. Gibbons, supra, and said in part (Per Huddleston, B.)

"I think that the question can be decided on the common law principle that husband and wife are one. * * * We think it our duty to hold that according to a well recognized principle husband and wife are in the same position and therefore that the uttering of a libel by a husband to his wife is no publication, in cases apart from the Married Women's Property Act. * * * "

The latest of the three cases was the California case (Sesler v. Montgomery) decided in March, 1889, which was a decision upon rehearing. The evidence showed that the alleged slanderous words were spoken in the house of the defendant in a conversation addressed exclusively to his wife. Plaintiff was eavesdropping and claimed to have heard the alleged slanderous words from a point outside the door of the room in which defendant and wife were talking, they not knowing of his presence there. Previously in the same case by a commissioner's opinion, adopted per curiam (Id., 3 Cal Unrep. 27, 19 P. 686), it had been held that the statement by defendant to his wife, under such circumstances, constituted a publication. Upon rehearing in banc, however, the opposite result was arrived at. The court cited Trumbull v. Gibbons, and (per McFarland, J.) said in part as follows:

"The Codes of this state provide how marriages may be entered into and how divorces may be obtained, and they also have certain provisions, different from the rules of the common law, about the property of the spouses, and, to a limited extent, about their power to make contracts, etc. But in the Codes there is no attempt made to change the essential nature of marriage, or to state its manifold incidents and consequences, or to establish new rules for the solution of the various questions which arise out of those incidents and consequences. Moreover, although the Codes define slander as a 'false and unprivileged publication' of certain matters, they do not declare what shall constitute 'publication.' For the determination of these questions, therefore,—as there are no provisions about them in the Codes,—we must look to the common

law, which is the basis of our jurisprudence. Pol. Code, § 4468; Van Maren v. Johnson, 15 Cal. 312.

"It is admitted to be the settled rule that there can be no publication within the meaning of the law of slander unless the words alleged to be slanderous are spoken to, and in the presence of, a third person; that is, a person other than the one·who speaks and the one to whom the words are spoken. A man entirely alone cannot commit slander by talking aloud to himself. And the final question to be solved is whether a wife, when spoken to by her husband in the privacy of home, and not in the presence of others, is a 'third person' within the meaning of the law under review, or whether, under those circumstances, there should be applied the doctrine that the husband and wife are, civilly, one person.

"There is no doubt of the general common-law rule that the civil existence of the wife is merged in that of her husband. Blackstone says that 'by marriage the husband and wife are one person in law,' and that 'the legal existence of the woman is suspended during the marriage, or, at least, is incorporated and consolidated into that of the husband.' * * *

"It is said that this rule was a legal fiction, and that in the course of modern legislation and judicial decisions it has been exploded. But it is no more a fiction than any other general principle of law, and we have seen no authentic account of the explosion. There always were some exceptions to the rule, from the earliest history of the common law, and modern legislation and decision have merely created additional exceptions. The general rule still obtains, save where an exception has been legally established, and we have been referred to no decision establishing an exception as to the point involved in the case at bar. Indeed, the only case in point cited at all is from an inferior court of New York (Trumbull v. Gibbons, 3 City H. Rec. 97), in which it was directly held that the delivery of a defamatory manuscript by a husband to a wife was not a publication. And every sound consideration of public policy, every just regard for the integrity and inviolability of the marriage relation,—the most confidential relation known to the law,—should restrain a court from establishing the exception upon which the judgment in the case at bar rests. When husbands and wives talk to each other alone, the conversation differs but little from the process of talking to one's self, or,

as it is sometimes called, 'thinking aloud.' There is no intention that the conversation shall be repeated to others, and no presumption that it will be. It would be strange, indeed, if a husband or wife could not safely say anything to the other about their neighbors or acquaintances which he or she would not feel warranted in saying to the world. Such a rule would destroy all opportunity for confidential conference, advice, or suggestion * * *

"Our conclusion is that a communication from a husband to a wife, not in the presence of any other person, does not constitute a publication within the meaning of the law of slander."

There are numerous cases dealing with the question of whether and when communication between husband and wife is privileged (see e. g. Conrad v. Roberts, 95 Kan. 180, 147 P. 795, L. R. A. 1915E, 131, Ann. Cas. 1917E, 891), but we have discovered no other cases ruling on the precise point of whether communication between spouses in a private conversation, they not knowing or having reason to believe they could be overheard, amounts in law to a publication, unless we may consider as such a holding the obiter dictum in Schinzel v. Vuyk (1925) 126 Misc. Rep. 202, 213 N. Y. S. 135, 136, where it is said: "The general rule seems to have been that every person (not referring, of course, to aids of the communicator, such as stenographers, etc.) is a third person so as to constitute what is known in defamation law as publication, except that a communication of a wife to a husband, or of a husband to a wife, has not been deemed a communication to a third person."

And we have found no case maintaining a position contrary to the three decisions we have reviewed above, excepting the overruled first decision in Sesler v. Montgomery, and possibly an inference by dicta in State v. Shoemaker (1888) 101 N. C. 690, 8 S. E. 332, 335, although in that case the doctrine did not have application in any event because, as stated by the court, "the words spoken were not of a gentle and confidential character, between husband and wife, but spoken in a loud tone, which could have been heard a long way off; and besides, it appears from the testimony on behalf of the defendant that a negro woman was near, and that the witness John Lytle was in hearing."

Appellant urges, and it must be conceded that the doctrine announced is based in terms upon a common-law fiction of identity

of husband and wife, which fiction is daily less indulged. At the common law, the husband was liable for any and all torts of the wife during coverture, and to some extent prior thereto, which, of course, is no longer the rule in this state. Section 175, Rev. Code 1919; Bebout v. Pense, 35 S. D. 14, 150 N. W. 289. It has always been held that the spouse of a party plaintiff is sufficiently a third person, so that a slanderous statement by defendant to him or her concerning the plaintiff is in law a publication thereof. It seems in truth somewhat illogical to hold that the spouse of plaintiff is sufficiently a third person so that a statement to such spouse by a defendant concerning plaintiff is a publication, but that the spouse of defendant is not a third person, and that a statement by defendant to his own spouse concerning the plaintiff is not a publication. These and other logical arguments against the doctrine are set forth in the first opinion in Sesler v. Montgomery, 3 Cal. Unrep. 27, 19 P. 686, and other similar arguments will readily occur to the mind. Many will doubtless find it impossible to accept without some reservations the dictum of McFarland, J., that "When husbands and wives talk to each other alone, the conversation differs but little from the process of talking to one's self, or, as it is sometimes called, 'thinking aloud.'" At least, many will be of the opinion that, conceding that the process 'differs but little," the consequences and results are likely to differ vastly. It is of the wisdom of the ages that a man, for the good of his soul, may safely and even profitably meditate in the night watches upon his own sins and follies, and eke, in moderation, upon the foibles of his wife; but to "think" the same matters aloud to his wife might well be the height of imprudence, conducive to no good, and likely to entail consequences extremely unpleasant and even disastrous.

Returning, however, to more serious thinking, we are of the opinion that the doctine of the three cases cited, while based in terms upon a legal fiction which has met and is meeting with constantly diminished recognition, and while not in all respects logically defensible, is nevertheless founded in essence upon a very sound public policy. The doctrine has existed since 1819. It has met with general recognition and at least tacit approval by textwriters. It has come seldom before the courts, and we find no court which has seen fit to adopt a contrary rule. We think no changed conditions, either of statute law or public policy, require

us now to inaugurate a contrary ruling, and indeed the reasoning of Manistry, J., in Wennhak v. Morgan, supra, is doubtless as sound today as it was in 1888. He said:

"On the first point the maxim and principle acted on[1] for centuries is still in existence, viz., that as regards this case, husband and wife are in point of law one person. The earlier authorities on this point are collected in Montague Lush on Husband and Wife, at p. 3.

"It would be enough to say that that is the law and the ground of the law. But what is the real foundation of it? It is, after all, a question of public policy, or, as it has been well called, social policy. No doubt that principle has been interfered with by judge-made law. Public opinion has altered in some circumstances, and no better illustration of that can be given than the change of view as to deeds of separation between husband and wife. But, if public policy is considered, what is there to shew any change in judicial opinion or public policy with respect to communications between husband and wife hitherto held sacred? It has been argued that in some cases it might be well that publication of slander by a man to his wife should be actionable. But look at the other side, would it be well for us to lay down now that any defamation communicated by a husband to a wife was actionable? To do so might lead to results disastrous to social life, and I for one would be no party to making new law to support such actions."

Like this learned English jurist, we also are unwilling to sponsor the proposed innovation, and we deem it proper to refrain from rushing in where, if angels do not fear to tread, they ought at least to proceed with caution. We hold, therefore, that the learned trial judge rightly sustained the demurrer to the first cause of action.

We come now to a consideration of appellant's second cause of action, whereunder the trial court refused to permit the introduction of any testimony, for the reason that the same did not, in his opinion, state facts sufficient to constitute a cause of action. This second cause of action by reference alleges the residence of appellant, a widow, in the town of Martin, in Bennett county, and that she was engaged in the business of running a restaurant, which business was her sole means of support, whereby for several years she had been able to make a good living for herself and

children. That respondent was a practicing physician in said town of Martin, and that the relationship of patient and physician existed between appellant and respondent. It is then alleged that while such relationship existed the respondent did wrongfully, fraudulently, and maliciously publish and circulate a false, untrue, libelous, and slanderous statement concerning appellant, imputing to her the present existence of an infectious, contagious, and loathsome disease, in that on or about November 1, 1927, respondent, in the presence and hearing of one Thelma Young, at respondent's hospital in Martin, S. D., said to his wife, Mrs. Swift, "You should not have told Alvina Young and Isabel Livermont that Mrs. Springer has the syphilis; it has caused them a lot of trouble to look for another boarding place; they probably could not have carried the germs back here by boarding there anyway"—and plaintiff pleads her damage as a result thereof.

Manifestly there is in the second cause of action a sufficient allegation of publication, and it clearly appears that the language was used of and concerning appellant. The question is whether or not the language was defamatory. In a slander case, if the language complained of is reasonably open to but one interpretation, it is for the court to say whether or not such language is defamatory. Upon the other hand, if the language is ambiguous or susceptible of more than one interpretation, one of which would be defamatory and the other not, it is for the jury to say, under proper instructions from the court, in view of all the circumstances surrounding the publication and properly admissible extraneous facts, which of the two meanings would be attributed to the language by those who heard it. For a statement of the general rule, see 17 R. C. L. p. 423; 37 C. J. p. 101. It is not necessary, therefore, in order to state prima facie a cause of action for a complaint for slander to allege the publication of language which is necessarily defamatory and which is not susceptible of any nondefamatory interpretation. A prima facie case is established (so far as this element of the complaint is concerned) by alleging the publication of language which a jury, under proper instructions from the court, might reasonably find, under the circumstances of the publication, was defamatory. Under our statute (section 98, Rev. Code 1919), it constitutes slander to impute to any person the present existence of an infectious, contagious, or loathsome disease.

The imputation need not be by direct charging words affirmatively stating that the person has such disease. It is enough if, by a fair construction of the language used, a jury may reasonably find under proper instructions that the speaker intended the hearers to understand that he was representing or affirmatively implying the present existence of such disease in the person spoken of. The claimed defamatory language must be construed as a whole, and the words are to be taken in their natural meaning as people generally would understand them, and according to the sense in which they appear to have been used and the ideas they are adapted to convey to the hearer, and the circumstances of the speaking. Cf. Ramharter v. Olson, 26 S. D. 499, 128 N. W. 806, Ann Cas. 1913B, 253.

Particularly in view of the fact that the matter is now before us as to the second cause of action upon demurrer ore tenus, and if the case is tried the language proved may not correspond exactly with that charged, we specifically refrain from any attempt to determine whether the language charged is or is not so clearly and necessarily defamatory as to require the court so to instruct the jury as a matter of law, and we confine our inquiry solely to whether or not the language is reasonably susceptible of a defamatory interpretation. If so, a prima facie case is pleaded.

 Respondent urges that the language used was merely a reprimand addressed by respondent to his wife and nothing more, and that there is nothing defamatory about it. Looking at the first part of the statement, standing alone, this view might be indulged. If respondent's wife had stated to a third person that appellant had syphilis, respondent might reprimand his wife therefor without giving rise to any inference one way or the other as to the truth or falsity of the wife's statement. Respondent might say to his wife, "You should not have told Alvina Young and Isabel Livermont that Mrs. Springer has the syphilis." And that statement, standing alone, might not amount to any representation by respondent that Mrs. Springer either did or did not have syphilis. It is alleged here, however, that respondent added to such words the following, "it has caused them a lot of trouble to look for another boarding place; they probably could not have carried the germs back here by boarding there anyway." By the addition of those words a jury might very properly find that respondent meant and

intended thereby to imply and to be understood by his hearers as inferring that Mrs. Springer did in fact have syphilis. A jury might very well find that by such language respondent was reprimanding his wife for her statement to Alvina Young and Isabel Livermont, not because such statement lacked truth, but because (notwithstanding that the language of respondent implied its truth) there had been no necessity for making it, and the making of it had caused inconvenience. Certainly it would not be unreasonable for a jury to so find. As above stated, whether that is the only reasonable interpretation of the language and whether a court should instruct the jury as a matter of law that the language is defamatory, rather than leave to the jury the question of whether or not it is defamatory, we specifically refrain from deciding. We are therefore of the opinion that the second cause of action states a prima facie case. and that the learned trial judge erred in sustaining the demurrer ore tenus.

In what we have said above, relative to the respective functions of court and jury in a slander case, we are not unmindful of the language of the Constitution of this state, which provides in section 5 of article 6 as follows: "In all trials for libel, both civil and criminal, the truth, when published with good motives and for justifiable ends, shall be a sufficient defense. The jury shall have the right to determine the fact and the law under the direction of the court."

Nor have we overlooked the fact that this court in Ross v. Ward, 14 S. D. 240, 85 N. W. 182, 86 Am. St. Rep. 746, held, in substance, that this constitutional provision had application to a civil action for slander. The language of the constitutional provision, upon its face, applies only to trials for libel. We do not think it should be extended by judicial interpretation to cases of slander. We need not discuss the history or proper interpretation and construction of this constitutional provision further than to say that it seems generally accepted that this and similar constitutional provisions in other states (and sometimes statutory provisions) were adopted for the purpose of imbedding in the law of the various states the substance of the provisions of the English Act of 1792 (Ch. 60, 32 George III) commonly known as the "Fox Libel Act," which applied only to cases of libel as distinguished from slander, and the purpose of which was to do away

with an abuse which had grown up in English practice whereby the judges had, in substance, usurped a part of the jury's functions in cases of criminal libel. See Oakes v. State of Miss., 98 Miss. 80, 54 So. 79, 33 L. R. A. (N. S.) 207, and annotation thereto 33 L. R. A. (N. S.) 207. See, also, Annotation 51 L. R. A. (N. S.) 369, and note Ann. Cas. 1915D, page 1261, particularly at page 1267. At about the time of the decision in Ross v. Ward, (February, 1901), there were before this court two actions for libel to which, of course, the constitutional provision (whatever its proper interpretation) would, by its express terms, have application, and the existence of the constitutional provision was in the mind of the court and was mentioned by the court in the libel cases. See Boucher v. Clark Publishing Co., 14 S. D. 72, 84 N. W. 237, and Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233, both decided November 21, 1900. We think this court inadvertently failed sufficiently to observe the distinction arising from the fact that Ross v. Ward involved slander only, as distinguished from libel, and we are of the opinion that this court erred in Ross v. Ward, in holding the constitutional provision above quoted applicable to a slander case, and to that extent Ross v. Ward is expressly disaffirmed and overruled.

The judgment appealed from is reversed.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.